In the Matter of North European Oil Corporation, *Petitioner.*

*New Castle, February 15, 1957.*

*Alexander L. Nichols* of Morris, Steel, Nichols & Arsht, Wilmington, and *Stanley Law Sabel,* New York City, for petitioner.

*Edmund N. Carpenter, II* of Richards, Layton & Finger, Wilmington, amicus curiae.

*Aaron Kalb,* Trenton, N. J. Stockholder, pro se.

SEITZ, Chancellor: The petitioner, North European Oil Corporation ("corporation") has been unable to locate its majority stockholders and thus cannot take any action requiring the vote of a majority of its shares. The corporation therefore requests judicial approval of a reorganization plan which is designed to solve this problem.

The petition was set down for hearing on notice to all stockholders. The Court also appointed an Amicus Curiae to consider and report on the petition. At the hearing one stockholder appeared and objected to the plan. This is the decision after hearing.

The basic facts are not in dispute. They show that the corporation was chartered in Delaware in 1929 with an authorized capital stock of 4,000,000 voting shares of which 1,692,291 shares are issued and outstanding. On April 1, 1942, the charter became inoperative for non-payment of taxes, but was revived in July of 1954. The corporation's only income comes from oil interests in Western Germany. Since 1954, the corporation has never been able to obtain a representation of a majority of its stock at any meeting. The corporation was

able to elect directors only with the assistance of this Court pursuant to a statutory procedure. The corporation has made substantial efforts since 1954 to contact its shareholders but had as of the hearing date only made contact with the holders of about 650,000 shares. Thus, the corporation is powerless to take any action requiring majority vote.

At a special meeting of stockholders held June 21, 1956, a proposed plan of reorganization designed to solve its problem was overwhelmingly approved by the stockholders in attendance. However, less than a majority were present and so no action was possible. The corporation thereupon filed its petition seeking judicial authority to consummate its suggested reorganization plan.

The plan of reorganization as amended may be summarized as follows:

1. A new corporation would be organized (a form of Certificate of Incorporation and by-laws were submitted).

2. The assets of the petitioning corporation would be transferred to the new corporation in exchange for 1,692,291 shares of its capital stock.

3. The petitioning corporation would be dissolved and its shares in the new corporation would be distributed to petitioner's stockholders on a share per share basis, provided that all shares which were distributable to those of petitioner's stockholders whose whereabouts were not known to petitioner should be delivered to a trustee named by the Court. Such shares would be designated as non-voting shares and would not be entitled to vote at any meeting and would not receive dividends or other distributions, provided that any missing stockholder who appeared could claim his non-voting shares from the trustee and exchange them for voting shares in the new corporation. He would also be entitled to all dividends and distributions allocable to but not disbursed on account of such shares.

4. Upon consummation of the proceedings the new corporation would be discharged from the Court's jurisdiction arising from this action.

It might be noted that a ruling has been received from the Treasury Department that the reorganization will be tax free.

We are here dealing with a solvent corporation seeking judicial approval of a plan which will permit the known stockholders, constituting a minority, to become the only stockholders with a vote, subject to the right of the missing stockholders when found to become the holders of voting shares.

All agree that this is a unique application. No precedent has been found, nor is any Delaware statute in point. This Court's jurisdiction to grant relief must therefore be premised, if at all, upon its historic jurisdiction to afford relief in proper cases where there is no adequate remedy at law. Concededly this petitioner is without a remedy in the law courts.

Can the Court of Chancery supply relief by granting petitioner's application? No jurisdictional objection was raised but the Court nevertheless desired to satisfy itself on the point and appointed an Amicus Curiae to report, *inter alia,* on the jurisdictional question.

As the Amicus Curiae points out, the Court of Chancery has recognized that a receiver may be appointed by this Court for a solvent corporation in the absence of statute where the facts are sufficiently compelling. While not applied, the principle was recognized in the following cases: *Drob v. National Memorial Park,* 28 *Del.Ch.* 254, 41 *A.2d* 589; *Lichens Co. v. Standard Commercial Tobacco,* 28 *Del.Ch.* 220, 40 *A.2d* 447, 451. In the *Lichens* case it was recognized that a Court of Equity could in the absence of statute appoint a receiver for a solvent corporation where the fraud and mismanagement were accompanied by other special circumstances. Thus the Court said,

> "* * * in recent years there has been a growing tendency in this country to recognize that inherent right [to appoint a receiver] under special circumstances of great exigencies."

In considering authorities in this connection, it is interesting to examine the case of *S. E. C. v. Fiscal Fund,* 48 *F.Supp.* 712, wherein the U. S. District Court for Delaware recognized the broad power

of an Equity Court to resolve problems unforeseen in the drafting of corporation statutes.

■■■ As noted, this Court can intervene to appoint a receiver for a solvent corporation in the absence of statute, where stockholder or executive action or inaction threatens possible substantial injury to those interested in the corporation. By parity of reasoning it would seem that the Court has the power to appoint a receiver for the protection of interested parties where another type of impasse sufficiently threatens the corporation; viz., inability to obtain a majority vote on any of the many actions requiring such vote. I say this because the possible future injury to the corporation can be just as real here as it would be were the corporation confronted with corporate mismanagement or a deadlock caused by an evenly decided vote. I therefore conclude that the Court has jurisdiction to entertain the petition.

■■■ Since a receiver is but an agent of the Court it would seem that the Court can dispense with the appointment of a receiver and itself supervise the granting of appropriate relief once the proper showing has been made. This will be done here.

■■■ I next consider whether a sufficient showing has been made to entitle petitioner to relief of the general type requested.

First of all it must be admitted that the current corporate business is not being unduly prejudiced by a failure to make contact with the holders of a majority of the stock. But this does not fully answer the question because there are many other situations which can threaten the corporation and not be a matter of immediate urgency. Here it appears that diligent efforts have failed to result in contact being made with the holders of a majority of the stock. Moreover, based on the record that result is not likely to be changed within the reasonably foreseeable future. Consequently, the corporation cannot do any of the many things which require action by the majority stockholders. In this day and age of corporate life, this lack of flexibility can have serious consequences and it is particularly true of this corporation. The petitioner's sole source of income consists of a wasting asset, namely, oil property in Germany. The ability to exploit opportunities which may exist to enable the corporation to diversify its

source of income may well depend upon its power to sell its assets or to take other action requiring the vote of the holders of a majority of the shares. Yet, those steps would be denied this corporation because it has lost contact with the majority stockholders. In view of the nature and location of the property constituting the only source of income it will not do to say that the corporation should wait until some concrete situation arises before seeking judicial authority to take appropriate action. I am comforted in this conclusion in part by my belief based on the evidence that the stockholders who have been contacted appear to have the same interest in furthering the welfare of the corporation as we may assume the missing stockholders possess.

Under all the circumstances, therefore, I conclude that petitioner has made out a case entitling it to equitable relief.

I next consider whether the proposed plan of reorganization as modified should be approved. It seems to me that the proposed plan sufficiently protects the interest of the missing stockholders when it is combined with the conditions which I shall hereinafter impose. Under the plan a missing stockholder, as soon as he appears, will be able to obtain voting status and accumulated dividends and distributions. The major risk is that the voting stockholders will vote to take action of a type which the missing stockholders would oppose. However, I think this risk negligible because I find no evidence that the interests of the known stockholders differ from that of the missing stockholders.

The plan will therefore be approved including the charter provision authorizing an increase or decrease in the amount of authorized stock by the vote of a majority of the stock entitled to vote. The suggested procedure for implementing the decision as contained in the petitioner's supplemental brief will be adopted, including the provision that the petitioner be authorized to employ the company suggested by it to attempt to find the "lost" stockholders who are listed as having fifty or more shares. However, the names of outmoded entities such as dissolved brokerage houses may be omitted.

Since the petitioner is already in effect acting for the benefit of the missing shareholders there would seem to be no reason why the new

corporation should not be appointed trustee for the missing shareholders in order to keep the expenses low. The new corporation will therefore be appointed such trustee with authority to appoint appropriate agents to effectuate the duties imposed upon the trustee. The trustee, for each year until 1960, will be required to report to the Court the steps taken by it and the changes occurring during each such year. A procedure should be adopted to guide the trustee where applicants cannot produce certificates.

The principal grievance of the objecting stockholder was that sufficient effort had not been made by the corporation to locate the missing stockholders before the petition was filed. I agree that somewhat more substantial efforts toward that end could and should have been made. However, I think the efforts made were sufficient to show that the likelihood of locating the majority of the stockholdings in the near future was indeed remote. Moreover, the conditions upon which this application is approved should tend to allay the stockholder's concern.

I therefore conclude that the stockholder's objection to the approval of the plan should be overruled.

Order on notice.